**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Margaret Elias,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of<br>Social Security,<br><br>    Defendant. | No. CIV 10-244-TUC-CKJ (GEE)<br><br>**REPORT AND RECOMMENDATION** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §§405(g) and 1383(c).

The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.

Pending before the court is a motion for summary judgment filed by the plaintiff on November 8, 2010. (Doc. 19).

The Magistrate Judge recommends that the District Court, after its independent review, remand this action for further proceedings. The final decision of the Commissioner is not supported by substantial evidence.

//
//
//

PROCEDURAL HISTORY

On April 7, 2006, Elias applied for disability insurance benefits and supplemental security income. (Tr. 88, 91). She alleged disability beginning on October 15, 2005, due to fibromyalgia, depression, back problems, high blood pressure, and "prone to illness." (Tr. 107). Her claim was denied initially (Tr. 54-57) and upon reconsideration. (Tr. 60-66). Elias requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Lauren R. Mathon on September 6, 2007. (Tr. 11-18). In her decision, dated November 28, 2007, the ALJ found Elias was not disabled from the alleged onset date, October 15, 2005, until the date of the decision. *Id*. Elias appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-3); *See Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989).

Elias subsequently filed this action appealing the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). She argues the ALJ's decision (1) improperly discounted her own subjective testimony of disability and other lay testimony, (2) improperly discounted the opinions of the treating physicians, and (3) failed to adequately describe her residual functional capacity (RFC). (Doc. 19, p. 3) The Commissioner filed an answering brief on January 7, 2011. (Doc. 22). Elias filed a reply on January 14, 2011. (Doc. 23). The court finds the ALJ's RFC determination is not supported by substantial evidence and the case should be remanded to the Commissioner. The court does not reach the claimant's alternate arguments.

Claimant's Work History and Medical History

At the time of the hearing, Elias was 49 years old and a high school graduate. (Tr. 466-67). She has worked as a registration/attendance technician, school consensus aide and monitor, day care teacher's assistant, data entry worker, and secretary. (Tr. 115). In October of 2005, Elias left her job as registration/attendance technician because the job stress was "exacerbating [her] health issues." (Tr. 29-30). After that, Elias worked briefly as an Avon representative, a domestic worker, and a Greyhound trainee. (Tr. 26-28).

1   The medical record begins in 2002 with a prescription record for Levoxyl, which is used
2 to treat hypothyroidism, and Cartia, which is used to treat hypertension. (Tr. 395-96, 461).

3   In 2003, Elias was diagnosed with breast cancer and was treated with a modified radical
4 mastectomy. (Tr. 222, 264). After surgery, she was prescribed Tamoxifen and then Aromasin.
5 (Tr. 298, 301, 303). Her subsequent x-rays and mammograms were negative for any cancer
6 recurrence. (Tr. 298, 300, 422, 424).

7   X-rays taken in January of 2005 indicate mild hypertrophic spondylosis of the dorsal
8 spine. (Tr. 425).

9   In May of 2006, Elias' treating physician, R.L. Goedecke, D.O., prescribed Zoloft for
10 depression, which Elias attributed to her cancer medication. (Tr. 401). In June of 2006, Elias
11 reported mental cloudiness, forgetfulness, memory loss, neck and shoulder pain, right hand pain,
12 and pain down the back of her legs. (Tr. 401). She expressed a desire to be tested for
13 fibromyalgia. (Tr. 401). In September of 2006, Goedecke noted Elias had a positive test for
14 ANA indicating a possible autoimmune reaction. (Tr. 398).

15   Earlier, in July of 2006, Elias sought treatment for depression at COPE Behavioral
16 Services, Inc. (Tr. 355-58). She was prescribed Zoloft by Richard Barnes, M.D. (Tr. 477, 481,
17 485).

18   Goedecke referred Elias to a rheumatologist, J. Steven Strong, M.D., for neck and
19 shoulder pain. (Tr. 323). In November of 2006, Strong examined Elias and recorded the
20 following impression: "1. Cervical spondylosis with DDD, C4, C5 and C6; 2. Lumbar
21 degenerative facet disease at L4/L5 and L5/S1; 3. History of low thyroid function, on thyroid
22 replacement medication; 4. Essential HTN; 5. Status post breast malignancy, on long term
23 Aromasin therapy." (Tr. 323) (punctuation modified). He noted that, while Elias had a positive
24 ANA, she does not have active collagen disease. *Id*. He noted "mechanical abnormalities
25 developing in her C and L spine" and recommended strengthening exercises and weight
26 reduction. *Id*. He opined that her lethargy and fatigue may be a side effect of her medication.
27 *Id*.

28

1    Previously, in June of 2006, Paul J. Tangeman, reviewed the medical record and
2 completed a Psychiatric Review Technique form assessing Elias' psychological limitations. (Tr.
3 276-89). Tangeman found "no medically determinable impairment." *Id.*
4    In July of 2006, Elias was examined by Jeri B. Hassman, M.D., at the behest of the State
5 disability determination service. (Tr. 290). Hassman offered the following diagnoses: "History
6 of stage 2 breast cancer and status post left mastectomy in 2003, currently on Aromasin; No
7 evidence of fibromyalgia; Hypertension, controlled on medications; Depression. . . ." (Tr. 293).
8 Hassman opined Elias could lift or carry 20-30 pounds occasionally and 10 pounds frequently.
9 (Tr. 294).
10   In January of 2007, Charles Fina, M.D., reviewed the medical record and completed a
11 Physical Residual Functional Capacity Assessment of Elias' ability to perform work related
12 tasks. (Tr. 52, 386-93). Fina noted a primary diagnosis of hypertension and back pain. (Tr.
13 386-93). He noted a secondary diagnosis of obesity and depression. *Id.* Fina concluded Elias
14 could lift 50 pounds occasionally and 25 pounds frequently. *Id.* She could stand, walk, or sit
15 about 6 hours in an 8-hour day. *Id.* He noted Elias should only occasionally climb ladders,
16 ropes, and scaffolds. *Id.*
17   In January of 2007, Eugene Campbell, reviewed the medical record and completed a
18 Psychiatric Review Technique form assessing Elias' psychological limitations. (Tr. 372-85).
19 Campbell assessed a non-severe affective disorder. *Id.* He found Elias is mildly restricted in
20 her "activities of daily living" and has mild difficulties "maintaining concentration, persistence
21 or pace." *Id.*
22   In June of 2007, Elias underwent a nerve conduction study by Kaidong Wang, M.D. (Tr.
23 427-30). Elias complained of numbness and tingling primarily in the fingertips of her right
24 hand over the past 3 years. *Id.* She also complained of neck pain for at least the past five years.
25 *Id.* Wang diagnosed "moderately severe bilateral carpal tunnel syndrome." (Tr. 430). He
26 found "no evidence of cervical radiculopathy." *Id.* He recommended braces and education.
27 *Id.* He did not think surgery was needed at that time. *Id.*
28

In August of 2007, Richard Barnes, M.D., completed a Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment. (Tr. 447-50). Barnes found Elias "markedly limited" in her "ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances." (Tr. 448). He found her "moderately limited" in her "ability to complete a normal work day and workweek without interruption from psychologically based symptoms . . ." *Id.*

In September of 2007, Elias' treating physician, R.L. Goedecke, D.O., completed a Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment. (Tr. 452). He opined Elias could carry less than 10 pounds occasionally and nothing frequently. *Id.* She could stand or walk less than 2 hours in an 8-hour day. *Id.* She could not sit, climb, balance, stoop, kneel, crouch, crawl, reach, handle, finger, or feel. (Tr. 452-53). He opined Elias was "unable to handle any occupation" due to her Aromasin treatment, joint pain, chronic fatigue, and fibromyalgia-lupus. (Tr. 454).

On September 4, 2007, Elias' sister, Barbara R. Hutchings, wrote a letter on Elias' behalf. (Tr. 243). Hutchings wrote that she gives Elias and her son rides when Elias is not feeling well. *Id.* Sometimes, she picks up groceries for them. *Id.* Hutchings estimates that she helps Elias with errands "a few times a month." *Id.*

At the hearing on September 6, 2007, Elias testified that fatigue and joint pain are the main things preventing her from working. (Tr. 31). She has pain in her wrist, ankle, calf, and knee. (Tr. 32). She also has pain in her neck and back. *Id.*

Elias testified that she worked full time for the Tucson Unified School District during the 2004 school year. (Tr. 29). She continued working in the 2005 school year but left in October because it was "just too stressful." (Tr. 30).

Elias also suffers from fatigue and sleepiness, which she believes is a side effect from her medication. (Tr. 35).

Elias has a car and can drive herself to appointments. (Tr. 26). She can shop for groceries, but sometimes her son helps her with the unloading. (Tr. 36). She can do laundry but only one load per day. (Tr. 37).

## CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*. Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[1] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step, which

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 6 -

requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir.1988). The grids categorize jobs according to their exertional requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir.1999). Based on the claimant's exertunnal ability, age, education, and work experience, the grids determine whether or not the claimant is disabled. *Id.* The grids are a valid basis for denying claims where they completely and accurately describes the claimant's abilities and limitations. *Id.* at 1101-02.

If the claimant has significant nonexertional limitations, the grids do not apply. *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non[]exertional limitations are limitations that do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.1988). Mental limitations are nonexertional. *Id.* at 1340-41. If nonexertional limitations "significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable," and the ALJ must take the testimony of a vocational expert to deny the claim. *Id.* at 1341.

"The burden of proof is on the claimant as to steps one to four." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "As to step five, the burden shifts to the Commissioner." *Id.*

The ALJ's Findings

At step one of the disability analysis, the ALJ found Elias "has not engaged in substantial gainful activity since October 15, 2005, the alleged onset date . . . ." (Tr. 13). At step two, she found Elias has "the following severe combination of impairments: status post breast cancer and mastectomy, carpal tunnel syndrome, depression, back pain . . . ." *Id*. At step three, the ALJ

- 7 -

1 found Elias' impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 15).

The ALJ then analyzed Elias' residual functional capacity (RFC). (Tr. 15). She found Elias has the residual functional capacity to perform a light work[2] "except she can frequently climb, balance, stoop, kneel, crouch and crawl and can occasionally climb ladders/ropes/scaffolds." *Id.*

At step four, the ALJ found Elias was unable to perform her past relevant work. (Tr. 16). The ALJ noted Elias' past relevant work was sedentary to light work. *Id.* She further noted that Elias could perform her past relevant work through May 31, 2007, but could not perform her past relevant work beginning June 1, 2007. *Id.* At step five, the ALJ found, based on the grids, that Elias was not disabled. (Tr. 17).

STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567, 416.967.

- 8 -

1  as adequate to support a conclusion." *Id.*  It is "more than a mere scintilla but less than a
2  preponderance." *Id.*.

3       "Where evidence is susceptible to more than one rational interpretation, the ALJ's
4  decision should be upheld." *Orn*, 495 F.3d at 630.  "However, a reviewing court must consider
5  the entire record as a whole and may not affirm simply by isolating a specific quantum of
6  supporting evidence." *Id.*

7       In evaluating evidence to determine whether a claimant is disabled, the opinion of a
8  treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir.
9  1993).  The Commissioner may reject a treating physician's uncontradicted opinion only if he
10 sets forth clear and convincing reasons for doing so.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.
11 1995).  If the treating physician's opinion is contradicted by another doctor, the Commissioner
12 may reject that opinion only if he provides specific and legitimate reasons supported by
13 substantial evidence in the record.  *Lester,* 81 F.3d at 830.  No distinction is drawn "between
14 a medical opinion as to a physical condition and a medical opinion on the ultimate issue of
15 disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

16      "The opinion of an examining physician is, in turn, entitled to greater weight than the
17 opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).
18 "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the
19 uncontradicted opinion of an examining physician." *Id.*  "[T]he opinion of an examining doctor,
20 even if contradicted by another doctor, can only be rejected for specific and legitimate reasons
21 that are supported by substantial evidence in the record." *Id.* at 830-31.

22      The ALJ need not accept the claimant's subjective testimony of disability, but if he
23 decides to reject it, "[he] must provide specific, cogent reasons for the disbelief." *Lester,* 81
24 F.3d at 834.  "Unless there is affirmative evidence showing that the claimant is malingering, the
25 Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."
26 *Id.*  "General findings are insufficient; rather, the ALJ must identify what testimony is not
27 credible and what evidence undermines the claimant's complaints." *Id.*

28

DISCUSSION

The final decision in this case contains an internal inconsistency that casts doubt on the ALJ's use of the grids at step five of the disability analysis. It may be that this inconsistency can be resolved with further explanation, but as it stands now, the final decision of the Commissioner is not supported by substantial evidence.

The ALJ found that Elias has the residual functional capacity to perform light work but could only "occasionally climb ladders/ropes/scaffolds." (Tr. 15). At step five of the disability analysis, the ALJ found Elias was not disabled using the grids. (Tr. 17). Use of the grids was appropriate, according to the ALJ, because Elias' impairments "have little or no effect on the occupational base of unskilled light work." *Id.* By using the grids, the ALJ implicitly found that Elias' ability to perform the full range of light work is not significantly limited. *See Burkhart v. Bowen*, 856 F.2d 1335, 1341 (9th Cir.1988).

At step four, however, the ALJ found that Elias is unable to perform her past relevant work, which, the ALJ noted, was sedentary to light work. This finding is difficult to square with her use of the grids at step five. If Elias' ability to perform light work is not significantly limited (implied at step five), then she should be able to perform her past relevant work (which was sedentary to light work). The ALJ's finding to the contrary is an internal inconsistency and casts doubt on her decision to use the grids in step five.

The court does not mean to imply that these two findings are *inherently* inconsistent. These two findings could be reconciled, for example, if Elias' past relevant work required some special, out of the ordinary skill that Elias no longer has. If this were the case, Elias could simultaneously be unable to return to her past relevant work but still able to perform the full range of light work without significant limitation.

For example, suppose Elias is unable to perform her past relevant work only because it[3] requires her to climb ladders, ropes, or scaffolds on a *frequent* basis (which she cannot do). And

---

[3] For convenience, the court refers to Elias' past relevant work in the singular. The court expresses no opinion as to the number of Elias' previous jobs that qualify as past relevant work for the purposes of the disability analysis.

- 10 -

1 further suppose this particular work requirement is unusual for light work jobs. Then, Elias'
2 inability to return to her past relevant work would not be inconsistent with a finding that Elias'
3 ability to perform the full range of light work is not significantly limited.[4] And, the ALJ's use
4 of the grids would be appropriate. Unfortunately, the ALJ did not explain why Elias was unable
5 to perform her past relevant work[5], and this court is not authorized to supply its own
6 explanation. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Pinto v. Massanari*, 249
7 F.3d 840, 847-48 (9th Cir. 2001). Until this inconsistency is resolved, the court cannot conclude
8 that substantial evidence supports the ALJ's use of the grids at step five.

9 Because the decision of the ALJ was internally inconsistent, the final decision of the
10 Commissioner is not supported by substantial evidence and this case should be remanded to the
11 Commissioner for further proceedings. *See, e.g., Perez v. Astrue*, 2007 WL 2701260, 1 (9th Cir.
12 2007) (remanding in part because the ALJ's findings were internally inconsistent)
13 (unpublished); *Harrell v. Astrue*, 2008 WL 858771 *15 (E.D.N.C. 2008) (collecting cases).

### RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, enter an order granting the plaintiff's motion for summary judgment in part and remanding the plaintiff's claim for further proceedings. (Doc. 19).

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 14 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived.

---

[4] The court expresses no opinion as to whether or not the ALJ adequately supported her implicit finding that Elias' functional limitations do not significantly limit her ability to perform the full range of light work. *But see Chenault v. Astrue*, 2008 WL 2705573 *2 (C.D.Cal. 2008) ("Without evidence, such as the testimony of a vocational expert, the Administration cannot conclude that a non-exertional impairment has little or no effect on the occupational base.").

[5] Also unexplained is why Elias was able to perform her past relevant work before June 1, 2005, but not afterward. (Tr. 16).

- 11 -

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 9th day of March, 2011.

*Glenda E. Edmonds*
Glenda E. Edmonds
United States Magistrate Judge